*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: JOHNSON & JOHNSON TALCUM POWDER PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LITIGATION | MDL No. 2738 <br><br> Civil Action No.:17-4034(FLW) <br><br> **OPINION** |
| This document relates to: <br><br> Moore, *et al.*, Plaintiffs, <br> vs. <br> Johnson & Johnson, *et al.*, <br> Defendants. | |

**WOLFSON, United States District Judge:**

This matter, one of the transferred cases in the Johnson & Johnson Talcum Powder Products multidistrict litigation ("MDL"), comes before the Court on a motion to remand, filed by Plaintiff Bernandine Moore ("Plaintiff"),[1] pursuant to 28 U.S.C. § 1447. Plaintiff, a Pennsylvania citizen, contends that removal to federal court based upon diversity of citizenship, by disregarding the citizenship of the Pennsylvania defendant, Rite Aid HDQTRS Corp. d/b/a Rite Aid Corp. ("Rite Aid"), was defective, because Rite Aid was properly joined in the original state court action filed in Pennsylvania. Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively, "J&J"), as well as defendant Imerys Talc America, Inc. ("Imerys")(collectively "Defendants"), argue that

---

[1] Although not specifically indicated in the Complaint, co-plaintiff Jason McDowell appears to be Ms. Moore's husband. However, because Ms. Moore is the only person alleged to have used the products at issue in this case, the Court will only refer to Ms. Moore as Plaintiff for the purposes of this Opinion.

1

Rite Aid was fraudulently joined in this case to defeat diversity jurisdiction. Imerys separately argues that remand is not appropriate because the Pennsylvania state courts lack personal jurisdiction over Imerys. For the following reasons, I find that Plaintiff did not fraudulently join Rite Aid as a defendant, and thus, removal was improper. In that regard, Plaintiff's motion to remand is **GRANTED**. I note that because this matter is being remanded, Imerys' issue regarding personal jurisdiction shall be decided by the state court.

## PROCEDURAL BACKGROUND[2]

On February 1, 2017, Plaintiff filed this action sounding in negligence and strict products liability in the Court of Common Pleas of Philadelphia County in Pennsylvania, against J&J, Rite Aid and Imerys, claiming that she developed ovarian cancer due to regular perineal application of talcum powder. For purposes of determining diversity, the J&J entities are citizens of New Jersey, Imerys is a citizen of Delaware and California, and Rite Aid is a citizen of Pennsylvania. Plaintiff is a citizen of Pennsylvania.

On March 16, 2017, J&J filed a Notice of Removal, pursuant to 28 U.S.C. § 1446, to remove the matter to the U.S. District Court for the Eastern District of Pennsylvania. In so doing, J&J asserted that Rite Aid was fraudulently joined to defeat diversity jurisdiction because liability could not be imposed on Rite Aid. After removal, on June 1, 2017, the Multi-District Litigation ("MDL") Panel transferred this matter to this Court, and on June 28, 2017, Plaintiff moved to remand before this Court.

---

[2] The Court limits its discussion to the facts relevant to Plaintiff's instant motion to remand.

# FACTUAL BACKGROUND[3]

In or around January 2016, Plaintiff was diagnosed with ovarian cancer. Compl. ¶ 17. Plaintiff alleges that her cancer resulted from regular perineal application, during the time period of 1996 to 2015, of talcum powder contained in Johnson & Johnson Baby Powder and Shower to Shower products (collectively, the "J&J talcum products"). Compl. ¶¶ 71-74. These J&J talcum products, manufactured by J&J, allegedly are made from talcum powder mined and distributed by Imerys. *Id.* at ¶ 24. Plaintiff alleges that she regularly purchased those products from Rite Aid stores in Philadelphia, Pennsylvania. *Id.* at ¶ 73.

According to Plaintiff, the J&J talcum products are "dangerous," *id.* at ¶ 17, and that during the relevant period, a feasible alternative to the J&J talcum products, i.e., cornstarch, existed. *Id.* at ¶ 32. Cornstarch, Plaintiff alleges, is nearly as effective and has no known health effects. *Id.* More specifically, central to Plaintiff's allegation of Defendants' wrongdoing is that the J&J talcum products are carcinogenic and that various studies, the first of which was conducted in 1971, scientifically support this fact. *Id.* at ¶¶ 48-51. Plaintiff alleges that Defendants, including Rite Aid, were aware of these dangers, but failed to warn consumers that the J&J talcum products have "a known catastrophic health hazard associated with [their] use . . . ." *Id.* at ¶¶ 46, 63. In that connection, Plaintiff claims that Defendants "procured and disseminated false, misleading, and biased information regarding the safety of the [J&J talcum products] to the public and used influence over governmental and regulatory bodies regarding talc." *Id.* at ¶ 65.

---

[3] The following facts are taken from the Complaint, except where noted.

As to marketing, Plaintiff alleges that each defendant, including Rite Aid, played a role in the sales of J&J talcum products. Plaintiff avers that while J&J manufactures, markets, tests, promotes and sells the talcum products, Rite Aid distributed and sold those products in Pennsylvania. *Id.* at ¶ 28. Plaintiff avers that J&J advertised and marketed their "Shower to Shower" product as safe for use by women, *id.* at ¶ 37, and that Rite Aid collaborated with J&J in marketing the talcum products directly to consumers to increase sales. *Id.* at ¶ 38. In that regard, Plaintiff maintains that "Rite-Aid provides [J&J] direct access to retail performance data in order to allow [J&J] to target consumers, develop an understanding of shopper behavior and spending patterns and to increase sales of products such as talcum powder." *Id.* at ¶ 39. This "merchandising approach" was known as SEAL, "Simplify, Educate At Last." *Id.* at ¶ 40. In so doing, Plaintiff alleges that Rite Aid "conspired with [J&J] to market [the J&J talcum products] to Plaintiff and other consumers while failing to adequately warn about the risks." *Id.* at ¶ 46.

Having used the J&J talcum products for many years, Plaintiff alleges that she has suffered from severe and permanent physical injuries, endured substantial pain and suffering, and "needed to undergo extensive medical and/or surgical procedures." *Id.* at ¶ 75. Thus, as a result of each Defendant's role with respect to the products at issue, Plaintiff alleges that Defendants are jointly and severally liable for injuries and damages, including punitive damages, suffered by Plaintiff. *Id.* at ¶¶ 76-77.

Plaintiff's Complaint asserts 15 Counts against Defendants. The first three counts allege that Imerys, J&J and Rite Aid, all failed to adequately warn consumers of the dangers of using the J&J talcum products. *See id.* at ¶¶ 79-108. Relevant here, Plaintiff complains that Rite Aid "knew or should have known that the use of [the J&J talcum products] in the

female perineal area significantly increased the risk of ovarian cancer in women based upon scientific knowledge dating back until at least 1971, and had a duty to warn Ms. Moore of the known or knowable risks of ovarian cancer caused" by the products. *Id.* at ¶ 101. Counts VI-VIII of the Complaint alleges negligence against each defendant. Count VIII specifically names Rite Aid and asserts that "Rite-Aid breached its duty to Ms. Moore and were otherwise negligent in marketing, selling and/or distributing [the J&J talcum products] . . . ." *Id.* at ¶ 144. Plaintiff also asserts, in Count XIII, that Rite Aid, along with all other defendants, negligently misrepresented that the J&J talcum products were safe for use in the perineal area. *Id.* at ¶ 182. Plaintiff submits that each defendant had a duty to accurately and truthfully represent to the public about the true safety and efficacy of the J&J talcum products when used in the perineal area. *Id.* at ¶ 184. Plaintiff further maintain that because Defendants' representations of safety were in fact false, they failed to exercise ordinary care concerning the products "while they were involved in their manufacture, sale, testing quality assurance, quality control, and distribution in interstate commerce . . . ." *Id.* at ¶ 185.[4]

Plaintiff now moves to remand the instant matter to the Court of Common Pleas of Philadelphia County in Pennsylvania, on the basis that Rite Aid is a citizen of Pennsylvania, and it was properly joined in this matter; thus, Plaintiff argues this case lacks complete diversity. J&J and Imerys oppose the motion asserting that Rite Aid does not have any reasonable possibility of being held liable for Plaintiff's injuries, and was therefore, fraudulently joined in this action to defeat diversity jurisdiction.

---

[4] All remaining counts of the Complaint are asserted against either J&J and/or Imerys. Because those counts are not at issue here, I will not discuss them.

## DISCUSSION

Pursuant to 28 U.S.C. § 1407, this civil action was transferred to this Court as part of the Johnson & Johnson Talcum Powder Products multidistrict litigation ("MDL"). "The legislative history of § 1407 . . . demonstrates that Congress intended transferee courts to have broad pretrial authority." *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). "Under the Federal rules the transferee district court [has] authority to render summary judgment, to control and limit pretrial proceedings, and to impose sanctions for failure to make discovery or comply with pretrial orders." *Id.* (citation omitted). Thus, "[a]s an MDL court sitting within the Third Circuit, [this District Court] must apply [this] Court of Appeals' fraudulent joinder standard." *In re Diet Drugs (Phentrmine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. 03-20128, 2003 WL 21973329, at *2 (E.D. Pa. June 12, 2003) (citing *In re Korean Airlines Disaster,* 829 F.2d 1171, 1174 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)); *In re Ikon Office Solutions, Inc. Secs. Litig.,* 86 F. Supp. 2d 481, 484 (E.D. Pa. 2000)); *see also In Re Plavix Prod. Liab. & Mktg. Litig.*, No. 13-3610, 2014 WL 4954654, at *6–*8 (D.N.J. Oct. 1, 2014) (applying the Third Circuit's fraudulent joinder standard to a matter that was initially filed in California state court and subsequently removed to the U.S. District Court for the Northern District of California, where it was transferred to the District of New Jersey as part of an MDL).

## STANDARD OF REVIEW

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." The defendant seeking to remove the matter

bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). After a case has been removed, the district court, however, may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c).

In cases where subject matter is based on diversity jurisdiction, *see* 28 U.S.C. § 1332, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); *Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). Additionally, Section 1441(b)(2) imposes an added condition on removal known as the "forum defendant rule," which provides that an "action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." "Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case." *In Re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *3 (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

## FRAUDULENT JOINDER

An exception to the requirement that removal be based solely on complete diversity is the doctrine of fraudulent joinder. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). Where multiple defendants are named, but one or more are not of diverse citizenship from the plaintiff, "the diverse defendant[s] may still remove the action if [they] can establish

that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. To make this showing, "the removing party carries a heavy burden of persuasion," *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citations omitted); *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), because "removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Batoff*, 977 F.2d at 851 (quoting *Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988) (internal citation omitted)).

The Third Circuit has instructed "that joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer,* 913 F.2d at 111 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (describing a claim as not colorable if it is "wholly insubstantial and frivolous"). Accordingly, a court's determination of fraudulent joinder does not focus on whether plaintiff's claims are "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) or Rule 12(b)(6), rather it focuses on whether they are more than "frivolous." *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852. To be clear, and importantly, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *In re Briscoe*, 448 F.3d at 218 (quoting *Batoff*, 977 F.2d at 852).

Once the district court determines that the nondiverse defendant was fraudulently joined, the court can "disregard, for jurisdictional purposes, the citizenship of certain

nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *In re Briscoe*, 448 F.3d at 16 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). However, should the district court determine that a colorable ground exists to support a claim against the nondiverse defendant, then subject-matter jurisdiction is lacking over the removed action and the joinder was not fraudulent. 28 U.S.C. § 1447(c); *In re Briscoe*, 448 F.3d at 216. Of course, if subject-matter jurisdiction is lacking, the district court must remand to state court. *Id.*

Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)). In so doing, the court must "assume[ ] as true all factual allegations of the complaint," *Batoff*, 977 F.2d at 852 (citation omitted), "resolve all contested issues of substantive fact in favor of the plaintiff[,] and . . . resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer*, 913 F.2d at 111 (citation omitted).

Applying these standards, the district court must make a two-part inquiry. First, the court must determine whether the complaint sufficiently alleges the nondiverse defendants' "identity and conduct to justify consideration of their citizenship." *In re Briscoe*, 448 F.3d at 218 (quoting *Abels*, 770 F.2d at 29). Second, the court must cautiously tread "beyond the face of the complaint for indicia of fraudulent joinder," *Id.* (quoting *Abels*, 770 F.2d at 29), without stepping "from the threshold jurisdictional issue into a decision on the merits." *Id.* at 219 (quoting *Boyer*, 913 F.2d at 112 (citation omitted).

As part of the fraudulent joinder assessment, "'the district court must focus on the plaintiff's complaint at the time the petition for removal was filed.'" *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d Cir. 2013) (quoting *In re Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851)); *see also Abels*, 770 F.2d at 29 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 540 (1939)); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 & n.16 (5th Cir. 1995) (explaining the rationale for this requirement). However, information outside of the complaint may be considered for jurisdictional purposes when it *clarifies* an allegation included in the complaint:

> [Although [the defendant] is correct that a plaintiff may not defeat removal by subsequently *changing* his [complaint], because post-removal events cannot deprive a court of jurisdiction once it has attached, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938),] in this case the affidavits clarify a petition that previously left the jurisdictional question ambiguous. Under those circumstances, the court is still examining the jurisdictional facts *as of the time* the case is removed, but the court is considering information submitted after removal.

*Cavallini*, 44 F.3d at 265 [5] (emphasis original) (quoting *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), *rev'd sub nom. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999); *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 964 (S.D. Ind. 1999) ("saying that the district court must 'focus on the plaintiff's complaint at the time the petition for removal was filed' falls short of prohibiting a plaintiff from elaborating on the claims actually asserted in the

---

[5] The Third Circuit has approvingly cited to *Cavallini v. State Farm Mut. Auto Ins. Co.*, for its rationale of focusing on the plaintiff's complaint at the time the petition for removal was filed. *See Hogan*, 536 F. App'x at 211.

complaint"). However, considering post-removal information for clarification purposes "does not [mean] that, after a fraudulent joinder removal, a plaintiff may amend the complaint in order to state a claim against the nondiverse defendant, and thus divest the federal court of jurisdiction." *Id.* (footnote omitted); *accord Griggs v. State Farm v. Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("[p]ost-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court" (citation omitted)).

## ANALYSIS

Plaintiff's injuries allegedly resulted from her perineal application of the J&J talcum products from approximately 1996 to 2015, and that Plaintiff purportedly purchased those products from Rite Aid. Plaintiff claims that Rite Aid, as a seller of those products, should be held strictly liable for its failure to warn consumers of their alleged dangers. Alternatively, Plaintiff alleges that Rite Aid was negligent in its marketing, selling and/or distributing of the products, including misrepresenting that the products were safe for use in the perineal areas of women.[6] Defendants argue that Rite Aid is fraudulent joined, however, because contrary to strict liability law in Pennsylvania, Plaintiff's Complaint is devoid of any allegations that casually connect Plaintiff's ovarian cancer to the talc-containing products she purchased from Rite Aid.[7]

Pennsylvania adopted Restatement (Second) of Torts § 402A, which states that:

---

[6] It is undisputed that Pennsylvania law governs Plaintiff's substantive claims.

[7] Because I find that Plaintiff has, at least, a colorable basis to assert her strict liability claim against Rite Aid, I need not analyze other causes of action; rather, I leave the merits of those claims to the sound judgment of the state court.

11

> (1) One who sells any product in a defective condition unreasonably dangerous to the seller or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*See Webb v. Zern*, 422 Pa. 424, 427 (1966);

Comment f to Section 402A further explains that the section "applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor . . . . It is not necessary that the seller be engaged solely in the business of selling such products." § 402 A, cmt. f. S*ee Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 Fed. Appx. 781, 785 (3d. Cir. 2009); *see also Malloy v. Doty Conveyor*, 820 F. Supp. 217, 220 (E.D. Pa. 1993) (quoting *Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 621 (Pa. Super. Ct. 1983)). In that regard, in Pennsylvania, a "seller" in this context includes "all suppliers of a defective product in the chain of distribution, whether retailers, partmakers, assemblers, owners, sellers, lessors or any other relevant category." *Burch*, 467 A. 2d at 622. This broad rule "ensures the availability of compensation to the injured party, and helps place the burden of such injury on parties who, unlike the consumer, have a better opportunity to control the defect or spread its costs through pricing." *Id.* Moreover, the justification for strict liability "'has been said to be that a seller . . . has undertaken and assumed a special responsibility' toward the user, that the public has the right to 'rely upon the seller, that

reputable sellers will stand behind their goods,' and that the proper persons to afford protection to consumers 'are those who market the products.'" *Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099, 1108 (E.D. Pa. 1990)(quoting Rest. (Second) of Torts § 402A cmt. c).

In Pennsylvania, to state a claim under § 402A for strict liability, a plaintiff must allege that 1) the product was defective, 2) that the defect was a proximate cause of the plaintiff's injuries, and 2) that the defect causing the injury existed at the time the product left the seller's hands. *Davis v. Berwind Corporation*, 547 Pa. 260, 266-67 (1997); *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 93-94 (1975). The seller is not liable if a safe product is made unsafe by subsequent changes. *Id.* Relevant here, "[a] dangerous product can be considered 'defective' for strict liability purposes if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Davis*, 547 Pa. at 267 (citation omitted). "The determination of whether a warning is adequate and whether a product is 'defective' due to inadequate warnings are questions of law to be answered by the trial judge." *Id.*

Here, Defendants argue that the Complaint does not plausibly allege that the talc products purchased at Rite Aid are causally connected to Plaintiff's ovarian cancer. I disagree. On this issue, I do not write on a blank slate. Recently, in *Kleiner v. Rite Aid Corp.*, No. 17-3975, 2017 U.S. Dist. LEXIS 173898 (E.D. Pa. Oct. 16, 2017), the court, applying Pennsylvania law, held that Rite Aid can be held strictly liable as a seller of J&J talcum products because the plaintiff alleged that Rite Aid placed those products on the market in a defective condition based on a failure to warn. *Id.* at *6-7. In that case, the plaintiff's strictly lability claim is virtually identical to the claim raised in this case. Indeed,

the plaintiff there also accused Rite Aid of "strict lability failure to warn." *Id.* at *2. The plaintiff alleged that she purchased the product regularly from eight Rite Aid stores over a prolonged period of time. While defendant J&J argued that the plaintiff did not specify how "regularly" she bought the products, in determining whether Rite Aid was fraudulently joined in that case, the court found that the plaintiff had alleged sufficient facts to establish that the J&J talcum products caused plaintiff's ovarian cancer. *Id.* at *6. In so holding, the court reiterated that in Pennsylvania, strict liability does not require the plaintiff to allege that the defendant-seller had the requisite knowledge of the inherent dangerousness of the products it sold.[8] *Id.* at *9. More importantly, the court found that the merit-based arguments made by the defendant should be directed at a later stage in the litigation, when plaintiff faces a heavier burden of persuasion. *Id.* at *7.

Here, Plaintiff, just like the plaintiff in *Kleiner*, alleges that she was diagnosed with ovarian cancer after over 20 years of usage of J&J talcum products brought from four Rite Aid stores. In that regard, Plaintiff asserts that Rite Aid, as a seller of those products, should be held strictly liable for the harm that she suffered by using the talcum products. J&J argues, as it did unsuccessfully in *Kleiner*, that Plaintiff, here, fails to allege how "regularly" she purchased and applied the talc products bought from Rite Aid. In other words, J&J takes issue with Plaintiff's lack of allegations regarding how frequently Plaintiff used the talcum products purchased at Rite Aid. Aa matter of fraudulent joinder, I agree with the *Kleiner* court that all that Plaintiff need to allege now is that her strict liability claim against Rite Aid is "possible" and has a colorable basis. *See Batoff v. State*

---

[8] Indeed, here, nonetheless, Plaintiff does allege that Rite Aid knew or should have known about the products' dangerousness.

*Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.").

Indeed, contrary to J&J's position, the Complaint is replete with allegations of wrongful conduct against Rite Aid. As I have set forth above, Plaintiff alleges that Rite Aid knew or should have known about the dangers of J&J talcum powder products, and despite the dangers, however, Plaintiff alleges that Rite Aid nevertheless participated in a scheme with J&J for the purpose of marketing the products for perineal use to female consumers. In that connection, Plaintiff avers that Rite Aid failed to warn consumers that the talc products could cause ovarian cancer. *See Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 638-39 (W.D. Pa. 2012)(applying Pennsylvania law, the court found that sellers of commercial products are required to provide reasonable instructions and warnings about the foreseeable risks of injury posed by their products, and failure to do so may subject the sellers may to strict liability); *Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 626 (E.D. Pa. 2008); *Thomas v. Staples, Inc.*, 2 F. Supp. 3d 647, 658 (E.D. Pa. 2014); *Beitler v. City of Phila.*, 738 A.2d 37, 41 (Pa. Super. 1999).

On the face of the Complaint, I cannot find any indicia of fraudulent joinder for the purpose of destroying diversity. Plaintiff's allegations show an actual intention to proceed against Rite Aid. Therefore, without "inquir[ing] any further into the legal merits[, which] would be inappropriate in a preliminary jurisdictional determination," there is "some reasonable basis in fact and some colorable legal ground supporting a [strict liability] claim

against [Rite Aid]." *See In re Briscoe*, 448 F.3d at 219. (internal citations and alterations omitted). Thus, it cannot be said that the claims asserted against Rite Aid could be deemed "wholly insubstantial and frivolous." *Id.* at 218. However, I stress that this determination involves only the issue of fraudulent joinder, not whether Plaintiff's claims would pass muster under Rule 12(b)(6).

Finally, in opposing remand, Imerys argues that the state court would lack personal jurisdiction over it. I note that Imerys did not file a motion to dismiss for lack of personal jurisdiction, but rather raised this argument in an opposition brief. In any event, because I find that removal on diversity grounds was not appropriate, the question of personal jurisdiction shall be left to the state court, and Imerys may raise this issue upon remand.[9]

## CONCLUSION

For the above reasons, Plaintiff's motion is **GRANTED**, and this matter is remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

DATED: October 3, 2018
/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. District Judge

---

[9] This is not the only member case in the MDL wherein Imerys has raised the question of personal jurisdiction. While, in this case, I find that the state court should decide the issue, this Court may confront this question again in other pending cases in the MDL. And, based on Imerys' jurisdictional arguments, I caution that some plaintiffs, including Moore, would face an uphill battle in demonstrating personal jurisdiction. Furthermore, I note that the fraudulent joinder analysis that I have conducted here only concerns the strict liability law in Pennsylvania; this Opinion, thus, is limited in that respect.

16